# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ROBERT D. ELLINGSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-13-226-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Robert D. Ellingson requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born October 26, 1958, and was fifty-four years old at the time of the administrative hearing (Tr. 27). He completed the ninth grade, and has worked as a tractor-trailer truck driver (Tr. 17, 137). The claimant alleges he has been unable to work since October 16, 2010, due to problems from past cancer surgeries, including inability to concentrate and being very emotional (Tr. 136).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, on March 1, 2011. His application was denied. ALJ Bernard Porter held an administrative hearing and determined that the claimant was not disabled in a written opinion dated December 18, 2012 (Tr. 11-19). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform medium work as defined in 20 C.F.R. § 404.1567(c), with the following exceptions: (i) he must never climb ladders or scaffolds, and never crawl; (ii) he must not work in extreme temperatures; (iii) he must have no more than occasional interaction with the public, coworkers, and supervisors; (iv) time off task would be accommodated by normal breaks;

and (v) he cannot perform work at a rapid pace, but would be able to perform goal-oriented work (Tr. 16). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform in the regional and national economies, *e. g.*, kitchen helper, order picker, and cleaner (Tr. 18).

## Review

The claimant argues that the ALJ erred: (i) by failing to evaluate the opinions of his treating psychiatrist, Dr. Richard Zielinski, and his mental health counselor, Ms. Linda Estes, and (ii) by failing to properly assess his credibility. The Court finds that the ALJ *did fail* to properly evaluate the opinion of Ms. Estes (as well as third party evidence from the claimant's sister, which supported the opinion), and the decision of the Commissioner must therefore be reversed and the case remanded for further proceedings.

The ALJ found that the claimant had the severe impairments of residuals from bladder cancer treatment, including major depression, post-traumatic stress disorder (PTSD), and a urostomy (Tr. 13). As to his mental impairments, the claimant began treatment with Ms. Estes on October 26, 2011, at which time she noted that his current condition of health (including mental diagnosis) was fair, that the claimant was not able to work, and that he had no income and was unable to afford supplies for his disability (the urostomy) (Tr. 259). She assessed him with major depressive disorder, recurrent episode severe, and PTSD, along with a global assessment of functioning (GAF) score of 50 (Tr. 262). Follow-up appointments with Ms. Estes indicated the same diagnoses, along with GAF scores of 53 and 55 (Tr. 266, 277). Dr. Zielinski managed his

-4-

medications, noting the claimant's reports of difficulty concentrating, managing his emotions, and sleeping (Tr. 273-274, 283-284, 286-287). Additionally, on September 6, 2012, Ms. Estes prepared a letter describing the claimant's impairments, including his recurring nightmares resulting from his surgery during which he woke up and saw himself on the operating table (Tr. 294-295). She stated, in part, that "Robert's health issues are ongoing as are his mental health issues. He continues to suffer with major bouts of depression and goes into a panic thinking about his ability to function with the [losses] he has suffered and the trauma he experienced and continues to experience every night in his dreams" (Tr. 295).

Michael Maguire, Psy. D., conducted a consultative psychiatric evaluation of the claimant on May 31, 2011 (Tr. 215). He assessed the claimant with dysthymic disorder, noting that the claimant's depressed mood was not being treated due to an inability to afford his high deductible. He stated, "with proper, adequate treatment, his depressed mood will most likely improve. His prognosis is fair without treatment and good if he gets treatment" (Tr. 217). On September 14, 2011, state agency physician Jaine Foster-Valdez completed a Psychiatric Review Technique (PRT) form indicating that the claimant currently had no severe mental impairment (Tr. 235).

The claimant's sister June Loveland prepared a Third Party Function Report on April 3, 2011 (Tr. 141-150). She indicated the claimant mostly reads or watches television, and struggles with depression and becoming emotional (Tr. 142). She indicated that he used to be a truck driver, but he now struggles with sleeping at night, as well as finishing things that he starts. She indicated that he is able to take care of his

personal grooming, and gets outside almost every day, and is able to shop for groceries but not for very long (Tr. 142-146). She stated that he used to love to swim and go dancing, and now he struggles with lifting over ten pounds, bending (due to the urostomy), concentration, completing tasks, and getting along with others (Tr. 147-148). She stated that he does not handle stress well, but handles changes in routine "okay" (Tr. 149).

The claimant testified at the administrative hearing that he has difficulty concentrating long enough to do a job, that he had struggled with problems ever since waking up in his operation and seeing himself cut open, and that he goes through mood swings and depression (Tr. 29, 31). Although he worked for many years after his 1997 surgery, he stated that it "gradually started laying heavier on my mind," and he was no longer able to put it aside to work (Tr. 31). He indicated that counseling has helped but that they told him he would never be able to completely "get rid of" it (Tr. 32). Physically, he noted that he has a hole in his stomach due to his urostomy bag (Tr. 33). He explained that he was fired from his last job because he could not make deliveries or pick up goods on time (Tr. 39-40).

In his written opinion at step two, the ALJ noted that Dr. Zielinski and Ms. Estes had treated the claimant but that "there is no opinion in file from the claimant's treating sources that he would have disabling mental limitations notwithstanding a letter in the record from Linda Estes" (Tr. 15). At step four, the ALJ stated that he "relied heavily" on the state agency physicians and physical consultative examination, but disagreed with their findings to the extent the claimant had greater limitations of physical movement due

to the urostomy (Tr. 16). As to his mental impairments, the ALJ assigned little weight to Dr. Maguire and Jaine Foster-Valdez in light of the subsequent mental health treatment records (Tr. 17). He then found the claimant not credible, and found that the claimant did not have difficulty concentrating (Tr. 17). The ALJ did not, however, discuss the opinion of Ms. Estes, nor any of her treatment records, GAF scores, or diagnoses, nor did he discuss Dr. Zielinski's medication management, the claimant's hearing testimony, or the Third Party Function Report at step four (Tr. 16-17).

Social Security regulations provide for the proper consideration of "other source" opinions such as that provided by Ms. Estes herein. *See, e. g., Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (noting that other source opinions should be evaluated with the relevant evidence "on key issues such as impairment severity and functional effects" under the factors in 20 C.F.R. §§ 404.1527, 416.927), *quoting* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *1 (Aug. 9, 2006). *See also* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *6 ("[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."). The factors for evaluating opinion evidence from "other sources" include: (i) the length of the relationship and frequency of contact; (ii) whether the opinion is consistent with other evidence; (iii) the extent the source provides relevant supporting evidence; (iv) how well the source's opinion is explained; (v) whether claimant's impairment is related to a source's specialty or area of expertise; and (vi) any other supporting or refuting

factors. *See* Soc. Sec. Rul. 06-03p at *4-5; 20 C.F.R. § 404.1527(d). The ALJ made no reference whatever to these factors at all, much less in connection with the evaluations by Ms. Estes, and it is therefore unclear whether he considered any of them. *See, e. g., Anderson v. Astrue*, 319 Fed. Appx. 712, 718 (10th Cir. 2009) ("Although the ALJ's decision need not include an *explicit discussion* of each factor, the record must reflect that the ALJ *considered* every factor in the weight calculation.") [citation omitted]. Nor did the ALJ otherwise discuss Ms. Estes' opinion, opting instead to mention its existence at step two then ignore its implications at step four. *See, e. g., Clifton*, 79 F.3d at 1010 ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.") *citing Vincent ex rel. Vincent v. Heckler*, 739 F.3d 1393, 1394-1395 (9th Cir. 1984).

Social Security Ruling 06-03p also provides the standards for evaluation of third party evidence such as that provided by the claimant's sister, Ms. Loveland. Other source evidence, such as functional reports or testimony from spouses, parents, friends, and neighbors, should be evaluated by considering the following factors: (i) the nature and extent of the relationship; (ii) whether the evidence is consistent with other evidence; and (iii) any other factors that tend to support or refute the evidence. Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *6. Here, not only did the ALJ wholly fail to apply these standards to the evidence provided by Ms. Loveland; the ALJ simply ignored it entirely in his written opinion. Because this evidence provided at least some support for the

observations made by Ms. Estes, the ALJ should have given it proper consideration instead of ignoring it.

Because the ALJ failed to properly consider the "other source" evidence provided by Ms. Estes and the claimant's sister Ms. Loveland, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 26th day of September, 2014.

_____

**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**